

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

**LETTER OPINION**
**NOT FOR PUBLICATION**

June 24, 2008

Neal M. Unger
334 Milltown Road, Third Floor
East Brunswick, NJ 08816
    (*Attorney for Plaintiff*)

Mitchell B. Jacobs
Scarinci & Hollenbeck, LLC
1100 Valley Brook Ave., P.O. Box 790
Lyndhurst, NJ 07071-0790

Richard P. Flaum
DiFrancesco, Bateman, Coley, Yospin, Kunzman, Davis & Lehrer, P.C.
15 Mountain Blvd.
Warren, NJ 07059-5686
    (*Attorneys for Defendants*)

    **RE:**    **Frangione v. Twp. of Edison, et al.**
            **Civ. No. 06-2046 (WJM)**

Dear Counsel:

    This matter comes before the Court on Defendants' Motion for Summary Judgment, which Plaintiff opposes.  The Court decides this matter on the papers.  Fed. R. Civ. P. 78.  For the reasons discussed below, Defendants' motion is **DENIED**.

## **Background**

The following is a brief summary of the factual and procedural history relevant to the instant motion for summary judgment. Plaintiff Lisa Frangione was hired as a violations clerk with the Township of Edison in November 1999. Approximately two and a half years later, she became a secretary/administrative assistant under the supervision of the Township Business Administrator. In 2005, the Democratic Party held its primary election in the Township. George Spadoro, the current Mayor of Edison, sought to once again become the Democratic candidate for the office of Mayor. Plaintiff alleges that she supported Spadoro in the June 2005 primary election, in which he was defeated by challenger Jun Choi. Plaintiff then began supporting Choi following his victory in the primary. In November 2005, Choi won the general election. Choi was sworn in as Mayor on or about January 1, 2006.

In early January 2006, Plaintiff alleges that Township Personnel Officer Barbara Eosso told her to go home and await reassignment. Plaintiff subsequently received a letter, dated January 31, 2006, informing her that her employment with the Township was terminated, effective immediately. The letter cited three recent clerical errors in Plaintiff's work. The following day, an article in the *Home News Tribune* indicated that five Township employees, including Plaintiff, had been fired on January 31. Choi was quoted as saying that the firings were "part of our downsizing and reorganization to make government more efficient," and that "[t]he main impetus for moving quickly is budgetary." According to the article, Choi said the five terminated employees held patronage positions or confidential mayoral appointments, and that one of the five was fired "for cause."

On May 4, 2006, Plaintiff filed a Complaint with this Court against Choi and the Township, claiming that she had been wrongfully and unlawfully terminated. Counts I and II of the Complaint are brought pursuant to 42 U.S.C. § 1983, and allege that Plaintiff was terminated was in retaliation for exercise of her First Amendment rights (Count I) and that her termination violated her right not to be deprived of a liberty and/or property interest without procedural due process under the Fourteenth Amendment (Count II). Counts III and IV, respectively, allege parallel violations of the New Jersey Constitution under Article 1, Paragraph 6 (right to free speech and association) and Article 1, Paragraph 1 (procedural due process). Count V alleges wrongful termination in violation of public policy, pursuant to *Pierce v. Ortho Pharma. Corp.*, 84 N.J. 58 (1980). Count VI alleges breach of contract.

Defendants now move for summary judgment in their favor on all counts of the Complaint. For the following reasons, Defendants' motion is denied.

### Discussion

I.      **Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Equimark Commercial Financial Co. v. CIT Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987).

In opposing summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; rather, only disputes over facts that might affect the outcome of the lawsuit, under the governing substantive law, will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247–48. At the summary judgment stage, this Court must view all evidence and consider all reasonable inferences in a light most favorable to the non-moving party. *Marzano v. Computer Science Corp.*, 91 F.3d 497, 501 (3d Cir. 1996).

II.     **Political Patronage Discrimination**

Defendants argue that because Plaintiff cannot establish that her political affiliation was a cause of her termination, Counts I, III and V must all be dismissed. With respect to Counts I and III, the United States Court of Appeals for the Third Circuit has developed a three-part test for claims of discrimination based on political patronage. *See Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007). To establish a prima facie case, a plaintiff must demonstrate that: (1) she was employed at a public agency in a position that does not require political affiliation; (2) she was engaged in constitutionally protected conduct; and (3) this conduct was a substantial or motivating factor in the government's employment decision. *See id*. Here, it is undisputed that Plaintiff has satisfied the first element of this test. *See* Defs.' Reply Br. 2. Defendants contend, however, that Plaintiff has failed to produce sufficient evidence to meet the second and third prongs of the prima facie case. The Court will address each element in turn.

     A.      **Constitutionally Protected Conduct**

The Third Circuit has given a broad construction to this element, holding that a plaintiff can meet the second element of the prima facie case if she has faced

discrimination because of active support for a losing candidate within the same political party, as in *Robertson v. Fiore*, 62 F.3d 596, 600–01 (3d Cir. 1995), or because of her failure to support the winning candidate, as in *Bennis v. Gable*, 823 F.2d 723, 731 (3d Cir. 1987), or because of her decision to be apolitical and support no candidate or party, as in *Galli*, 490 F.3d at 274. *See also id.* at 272–73 (discussing *Robertson* and *Bennis*).

Here, Plaintiff has put forth evidence that she actively supported Spadoro and worked on his campaign in the 2005 primary election. According to Plaintiff's testimony, her support included stuffing envelopes, speaking to individual members of the public, attending political functions and attending at least one campaign rally. Frangione Dep. 123:7–129:18; Frangione Cert. ¶ 4 (Dec. 7, 2007). Plaintiff has also put forth evidence that she did not begin supporting Choi's campaign until after he defeated Spadano in the primary election. Frangione Dep. 129:20–131:3; Frangione Cert. ¶¶ 5–6.

This evidence, viewed in the light most favorable to Plaintiff, is sufficient to establish that Plaintiff engaged in constitutionally protected conduct as defined by the Third Circuit in this context. *See Galli*, 490 F.3d at 272–75. Plaintiff has therefore established the second prong of her prima facie claim.

### B. Substantial or Motivating Factor

Finally, Plaintiff must establish that her constitutionally protected conduct was a "substantial or motivating factor" in her termination. *See id.* at 275. Implicit in this prong are two requirements; a plaintiff must produce evidence to show that defendants had knowledge of her political affiliation, in addition to demonstrating causation. *See id.*; *Stephens v. Kerrigan*, 122 F.3d 171, 177–80 (3d Cir. 1997); *Goodman v. Pa. Turnpike Comm'n*, 293 F.3d 655, 664 (3d Cir. 2002).

#### 1. Knowledge

"Proof of knowledge can come from direct or circumstantial evidence." *Goodman*, 293 F.3d at 664. Here, undisputed facts support an inference that Choi viewed Plaintiff as closely associated with Spadano's administration. Choi testified that he viewed Plaintiff as holding a "confidential" position, meaning that she served "at the pleasure of the mayor." Choi Dep. 80:17–20, 81:3–11, 82:1–6. Choi also testified that he believed "her position may have been a patronage position." *Id*. 80:20–21. He testified that in his view, a patronage position as one in which an individual "who has a government position, is not for the most part doing the job that they're supposed to and only got there because of political reasons." *Id*. 80:22–81:2.

The timing of Plaintiff's firing also provides circumstantial evidence of Choi's

4

knowledge that Plaintiff actively supported Spadano and did not support Choi in the primary election.  Plaintiff was terminated almost immediately upon Choi's assumption of office, at the same time as four other employees.  A newspaper article published the day after the firings reported that Choi viewed all five fired employees as patronage positions or confidential mayoral appointments, a belief which Choi affirmed at his deposition.  *Id*. 34:25–35:10, 36:22–37:3.  Moreover, Choi testified that Plaintiff's firing was motivated by a combination of two factors — a strong priority to downsize the government due to budgetary concerns, and the new administration's "right to recruit new people that represent the new direction of this government."  *Id*. 33:14–34:24.  Because it is undisputed that Plaintiff's position did not require a political affiliation, and that she worked in a secretarial — rather than a political or advisory — capacity, Choi's assertion that terminating Plaintiff was part of the new administration's move in a "new direction" is itself circumstantial evidence that he knew of, and begrudged, Plaintiff's political affiliation with Spadano.

Viewing these facts in the light most favorable to the Plaintiff, a jury could reasonably conclude that Choi believed Plaintiff to be a supporter of Spadano, or believed that Plaintiff did not originally support Choi's own campaign.  The knowledge element is therefore satisfied.

      **2.**     **Causation**

To establish causation, Plaintiff must produce sufficient evidence from which a reasonable jury could conclude that her political affiliation was a substantial or motivating factor in her termination.  *See Galli*, 490 F.3d at 276.  Defendants can avoid liability by showing that the same employment action would have occurred in the absence of the protected activity — for example, by articulating a nondiscriminatory reason for Plaintiff's termination.  *See Stephens*, 122 F.3d at 176, 181; *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).  Plaintiff may then "prevail by discrediting that proffered reason, either circumstantially or directly, or by adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or substantial cause of the adverse action." *Stephens*, 122 F.3d at 181.

Here, Defendants offer several non-discriminatory reasons for Plaintiff's termination.  Choi testified that prior to his swearing in as Mayor, the Township faced a significant structural deficit of several million dollars per year, and that reducing costs and downsizing the government were thus a high priority.  Choi Dep. 33:16–22, 34:18–20.  Choi testified that in order to improve the Township's fiscal condition, immediate review was undertaken of all non-union positions in order to determine which positions were essential or non-essential.  *Id*. 33:22–34:3.  The other important priority leading to the review of all non-union positions, Choi testified, was the right of the new

5

administration "to recruit new people that represent the new direction" of the Choi administration. *Id.* 34:3–6, 21–24. As a result of this review, Plaintiff was terminated because her position was not deemed essential, and because Choi had been informed that her performance was substandard. *Id.* 34:7–16. In support of Defendants' argument that Plaintiff's performance had been substandard for some time, Defendants cite job performance reviews from 2002 through 2004 which note attendance and punctuality problems, among other issues.

For her part, Plaintiff disputes that the Township faced a significant deficit at the time of her termination, and she has produced evidence to show that there was, in fact, no budget deficit at the time. *See* Capp Dep. 61:25–63:7; Bobal Dep. 62:6–63:12. This evidence, if proven, would certainly cast doubt on Defendants' proffered reasons. Additionally, Plaintiff has offered evidence contradicting Defendants' characterization of her work as "substandard," including the testimony of Plaintiff's immediate supervisor, Jonathan Capp, that Plaintiff was, overall, a satisfactory worker; that she had received periodic increases in pay; that her work performance had improved since her 2004 review; and that there had been no plans to terminate Plaintiff when he left office on December 31, 2005. *See* Capp Dep. 94:1–24, 96:11–14, 106:22–107:3, 185:16–186:18.

Because Plaintiff has produced sufficient evidence from which a jury could reasonably conclude that Defendants' proffered reasons were pretextual, Plaintiff is entitled to have a fact-finder determine whether her political affiliation or non-support was a substantial or motivating factor in her termination.

In sum, Plaintiff has produced sufficient evidence from which a jury could reasonably find that her party affiliation played a substantial or motivating role in her termination. Defendants' motion must therefore be denied as to Plaintiff's allegations in Counts I and III. For substantially the same reasons, Plaintiff has also made a proper showing to survive summary judgment on Count V, which alleges wrongful termination in violation of public policy under *Pierce*, 84 N.J. 58 (1980). Therefore, the Court must also deny Defendants' motion as to Count V.

### III.    Breach of Contract and Due Process Violations

Defendants contend that Plaintiff's employment with the Township was at-will and non-union, meaning that she was not a member of a union governed by a collective bargaining agreement and that no other employment contract governed her employment with the Township. As such, Defendants argue that since Plaintiff was an at-will employee whose employment could be terminated at any time and for any reason, Defendants are entitled to summary judgment on Counts II, IV and VI because (1) Plaintiff cannot show that an enforceable employment contract, implied or actual, existed

between her and the Township, as alleged in Count VI, and (2) Plaintiff had no constitutionally protected property interest in her continued employment with the Township, as alleged in Counts II and IV. Plaintiff counters that she was not, in fact, an at-will employee, but was employed pursuant to an implied contract contained in the Township's Employee Manual (hereinafter, "Manual") which provided that she could not be terminated without cause.

### A.    Breach of Contract

In *Woolley v. Hoffman-La Roche, Inc.*, 99 N.J. 284 (1985), the Supreme Court of New Jersey held that "absent a clear and prominent disclaimer, an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer even when the employment is for an indefinite term and would otherwise be terminable at will." *Id.* at 285–86. Where a manual is detailed, comprehensive, widely distributed, and lacks a clear and prominent disclaimer — characteristics which a court must construe in accordance with the reasonable expectations of the employees, *id.* at 298 — an enforceable contract can be found to exist. *Sellitto v. Litton Systems, Inc.*, 881 F. Supp. 932, 936 (D.N.J. 1994). *See also Woolley*, 99 N.J. at 297–300.

Here, the Manual contains disclaimers in the second and third paragraphs of the first page. First, it provides that "[t]he Township maintains that nothing in this or any other document received relative to employment with the Township is intended to convey and [sic] implied or actual employment contract." Manual at 1. Second, it provides that:

> In the absence of an individual written employment contract or collective bargaining agreement, the Township maintains a policy of employment "at will" in which either the Township or the employee may terminate the employment relationship at any time, for any reason or no reason, with or without cause or notice. This policy applies to all full-time and part-time employees.

*Id.* Defendants argue that these disclaimers are sufficient to negate any expectation of a contract, despite the language in the rest of the Manual.

Plaintiff, however, contends that these disclaimers are not sufficiently "clear and prominent" enough to satisfy the standard set by the Supreme Court of New Jersey in *Nicosia v. Wakefern Food Corp.*, 136 N.J. 401 (1994). Plaintiff also argues that the Manual's discussion of disciplinary procedures is detailed and comprehensive enough that a reasonable employee would interpret the Manual as creating certain rights and obligations.

As Plaintiff notes, the Manual creates a clear distinction between "probationary" and "permanent" employees, providing that during an initial 120-day probationary period, "[p]robationary employees may be released at any time during or at the end of the probationary period for any reason by the Department Head with the approval of the Business Administrator." Manual at 12. For permanent employees, in contrast, the Manual provides that "[d]isciplinary action may be imposed upon an employee *only for just cause*." *Id.* at 14 (emphasis added). The Manual then describes progressive policies and procedures for discipline, culminating in termination, which is defined as "[t]he permanent separation of an employee from employment *for cause*." *Id.* (emphasis added). The Manual goes on to outline disciplinary procedures in detail, providing that "[a]ny disciplinary action taken by management against an employee must be initiated verbally and in writing within thirty (30) days of the alleged violation or when management discovers the violation." *Id.* at 15. The Manual provides that "certain serious offenses may warrant the immediate dismissal of an employee." It then provides the following procedures under the heading "Termination for Cause":

a. After the completion of the probationary period, a Department Head may make a written recommendation to terminate an employee for cause when he/she feels such an action is in the best interests of the Township. Such recommendation, including reasons and documentation of progressive discipline actions, shall be submitted to the Business Administrator.

b. The Business Administrator will meet with the Personnel Officer and the Township Attorney to discuss the recommendation.

c. The Business Administrator will send a copy of his decision to the employee and to the Department Head. The employee, if terminated, will be advised of his/her rights to appeal the dismissal.

*Id.* Construing all of the above, the Court finds that the disclaimers in the Manual are not sufficiently prominent to satisfy the standard set in *Nicosia*. *See* 136 N.J. at 415–16. Although the disclaimers appear on the first page of the Manual — which, incidentally, is over 100 pages in length — they appear under the bland and general heading "Purpose," and are not at all separated or set off from the surrounding text in any way that would attract attention. *See id.*; *Sellitto*, 881 F. Supp. at 937–38. In contrast, the Manual's discussion of the probationary period and disciplinary procedures for permanent employees are detailed, comprehensive and definitive. Thus, the disclaimers do not negate the detailed job security provisions made elsewhere in the Manual, including that termination of a permanent, non-probationary employee will only occur where just cause

exists. Consequently, when construed "in accordance with the reasonable expectations of the employees," *Woolley*, 99 N.J. at 298, the Court finds that the Manual could be read to create an enforceable contract of employment. Therefore, material issues of fact exist as to the reasonable expectations of employees and the existence of an implied contract, which cannot be decided on a motion for summary judgment. *See Witkowski v. Thomas J. Lipton, Inc.*, 136 N.J. 385, 399–400 (1994).

Defendants' motion for summary judgment is therefore denied as to Count VI, Plaintiff's claim for breach of contract.

### B. Due Process Violations

The same result is required with respect to Counts II and IV, in which Plaintiff alleges that her termination violated her right not to be deprived of a property interest[1] without procedural due process under the Fourteenth Amendment (Count II) and the New Jersey Constitution (Count IV). Defendants argue that summary judgment is appropriate because Plaintiff, as an at-will employee, had no constitutionally protected property interest in her continued employment with the Township. *See Robertson*, 62 F.3d at 601. In light of the Court's findings regarding the possible existence of an implied contract, however, summary judgment must also be denied as to Counts II and IV.

### Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is **DENIED**. An appropriate Order accompanies this Letter Opinion.

    s/William J. Martini
**William J. Martini, U.S.D.J.**

---

[1] Although the Complaint also refers to the deprivation of a liberty interest, Plaintiff has not argued that she was in fact deprived of any liberty interest by her termination, and has provided no factual support for such a claim. Therefore, the Court construes Counts II and IV as alleging only the deprivation of a property interest.